# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2877 | **DATE** | 5/19/2004 |
| **CASE TITLE** | Pruitt vs. City of Chgo Dept of Aviation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons stated in the attached memorandum opinion, the Court hereby denies plaintiffs' motion for class certification. In addition, the Court denies plaintiffs' motion to strike and/or exclude statements procured by the defendant from putative class members. Defendant's motion to strike is also denied as moot. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | Document Number |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAY 20 2004 | |
| ✓ | Docketing to mail notices. Counsel for the parties picked up a copy of memorandum opinion on 05/19/04. | date docketed | 65 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| MW6 | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

BERNARD PRUITT, LEEANNETTA )
BAGGETT, BILLY BORUM, DAVID )
DAVENPORT, EVERETT FISHER, )
LEANDER GIBBS, WILLIAM )
OLASCOAGA, ELAINE PRESTON, )
LAMAR RODEZ, and WILLIE )
ROLLING, on behalf of themselves )
and all others similarly situated, )
                              )
               Plaintiffs, )
                              )
      v. )      No. 03 C 2877
                              )
CITY OF CHICAGO, DEPARTMENT )
OF AVIATION, )
                              )
              Defendant. )

DOCKETED

MAY 1 9 2004

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Bernard Pruitt's, Leeannetta Baggett's,

Billy Borum's, David Davenport's, Everett Fisher's, Leander Gibbs', William

Olascoaga's, Elaine Preston's, Lamar Rodez's, and Willie Rolling's ( "Plaintiffs")

motion for class certification as to Count I of their Class Action Complaint filed

against Defendant City of Chicago, Department of Aviation ( "Defendant").

Plaintiff has also filed a motion to strike and/or exclude statements procured by

1



Defendant from putative class members. In addition, Defendant has filed a motion to strike certain portions of Plaintiffs' reply to their amended motion for class certification.

For the reasons stated below, we deny Plaintiffs' amended motion for class certification, as well as Plaintiffs' motion to strike and/or exclude statements procured by Defendant from putative class members. Additionally, Defendant's motion to strike is denied as moot.

## BACKGROUND

Plaintiffs are African-American and Hispanic laborers who are employed by the City of Chicago, Department of Aviation. Plaintiffs allege that from 1992 to 2002, they were subjected to racial and national origin discrimination and harassment. Generally, Plaintiffs allege that harassing statements were made to them by their supervisors and that they were subjected to unfair working conditions because of their race and national origin. Plaintiffs have mainly accused a former foreman of Defendant named Anthony Jason ("Jason") for allegedly making harassing statements.

Plaintiffs allege a pattern and practice of racial and national origin harassment against African-American and Hispanic laborers prohibited by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 ("Section 1981"). Plaintiffs seek class certification as to Count I of their class action

complaint for a class of "all African-American and Hispanic employees, classified as laborers, for the City of Chicago, Department of Aviation at the O'Hare International Airport Facility ("O'Hare") from 1992 to 2002 who have been subjected to various forms of racial harassment because of Defendant's ineffective anti-harassment policy."

## LEGAL STANDARD

A plaintiff must first satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure in order to be granted a class certification. Rule 23(a) provides as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Failure by a plaintiff to satisfy any one of the above requirements precludes certification as a class. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). If a plaintiff is able to satisfy all of the requirements of Rule 23(a), the district court must then determine whether a

plaintiff's action can be maintained as a class action by meeting one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure. *See Williams v. Chartwell Fin. Servs., Ltd.,* 204 F.3d 748, 760 (7th Cir. 2001)(explaining Fed. R. Civ. P. 23(b)(1)(2)(3)).

In order to determine whether a class should be certified, a court may make factual and legal inquires necessary under Rule 23. *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675-76 (7th Cir. 2001). A court need not accept a plaintiff's assertions as conclusive, but may receive any evidence necessary to make a decision on class certification. *See id.*(explaining why the court accepts a complaint's factual allegations when ruling on motions to dismiss under Rule 12(b)(6) but does not when ruling on class certification motions under Rule 23).

## DISCUSSION

### I. Plaintiffs' Motion to Strike

Plaintiffs filed a motion to strike and/or exclude statements procured by Defendant from putative class members. Plaintiffs allege that Defendant's attorneys (1) participated in *ex parte* communications with putative class members; (2) have been undermining the express purpose of Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to determining whether a class should be certified; and that as such (3) have committed violations of the ethical rules of professional conduct. The court finds that these allegations are without merit.

4

In this case, Plaintiffs have not supported their contention that any abuse took place as a result of Defendant's communications with the alleged putative class members. Plaintiffs claim that Defendant improperly contacted putative class members. This raises issues concerning whether or not the court needs to issue a protective order prohibiting communications between the parties and putative class members. The purpose of a protective order is to ensure that the putative class members' rights are protected and that the intent of Rule 23 is not undermined. The Seventh Circuit has stated that each side of an action generally has a "right" to send a communication to class members. *E.E.O.C. v. Mitsubishi Motor Mfg. of America, Inc.*, 102 F.3d 869, 870 (7th Cir. 1996). While a court has limited "power to restrict communications between defendants and putative class members before the class is even certified. . . such control is designed to prevent abuse of the class action process" such as "[c]ommunications that undermine the purposes of Rule 23 includ[ing] misleading communications and communications which affect a putative class members' decision to participate in the class action." *Wiginton v. Ellis*, 2003 WL 22232907, at *2 (N.D. Ill. 2003)(citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 n. 12 (1981)). Generally, a Court issues "an order limiting discovery communications between parties and potential class members" only if such an order is warranted "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Williams*, 204 F.3d at 759. There is no evidence that Defendant abused the class

action process or was involved in misleading communications. In addition, Plaintiffs have failed to supply this court with any evidence - except for three paragraphs of speculation - that any of the putative class members' rights were in any way threatened by such communication. Pl.'s Mot. To Strike pages 4-5. Plaintiffs also claim that Defendant's attorneys have committed violations of the ethical rules of professional conduct. Such an allegation is a serious allegation and needs to be supported with sufficient evidence. Plaintiffs have failed to provide sufficient evidence to support their claims.

It appears that Plaintiffs' counsel's real motive in moving to strike the statements is to exclude evidence which might eventually be prejudicial to Plaintiffs' case. For instance, one of the documents that Plaintiffs are attempting to exclude is an affidavit from a Hispanic laborer at the Department of Aviation who not only states: "I have not been subject to, or seen anyone else subjected to any race discrimination, racial harassment, national origin discrimination or harassment, retaliation or any other improper treatment during my employment with the City," but also states: "I know the 10 people who filed this lawsuit and had heard that a discrimination suit had been filed against the City. I believe that they are all in the suit 'for the ride.' They're getting on the train and hoping to get money for it." (Def.'s App. Vol. III: Marquez ). Another affidavit that Plaintiffs seek to strike is from an African-American minister who is a laborer at the Department of Aviation. The affiant states that he had not been subjected to race discrimination or harassment

6

and further states: "I have not seen or heard of any African-American or Hispanic employees including any of the people who filed this lawsuit being treated unfairly by anyone at the City related to working assignments, or other terms and conditions of employment." The affiant also states: "Jason was a good guy to work for and we respected each other. Jason treated all employees equally and I did not observe him single out or treat unfairly any African-American, Hispanic, or any other employee." (Def.'s App. Vol. III: Fluker). Another example is an affidavit by an African-American laborer who stated that he was asked by Plaintiff Pruitt to join this lawsuit but that he told Pruitt that he would not get involved because he has not been discriminated against. The affiant further states: "I could not take part in this lawsuit because that would make me a liar." (Def.'s App. Vol. III: Lacy ).

There are numerous other affidavits by African-American and Hispanic laborers at the Department of Aviation indicating that they were not the subject of race discrimination or racial harassment and that they did not see Jason or other supervisors harassing other employees nor have they heard about such harassment. We emphasize in commenting on Plaintiffs' motives for seeking to exclude the affidavits and other materials that we are not ruling upon the merits of Plaintiffs' claims. Based upon the foregoing, we deny Plaintiffs' motion to strike and/or exclude statements procured by the Defendant from any putative class members.

## II. Class Definition

In their amended motion for class certification, Plaintiffs have defined their proposed class as consisting of: "all African-American and Hispanic employees, classified as laborers, for the City of Chicago, Department of Aviation at the O'Hare International Airport Facility ("O'Hare") from 1992 to 2002 who have been subjected to various forms of racial harassment because of Defendant's ineffective anti-harassment policy." Pl.'s Amend. Mem. pages 1-3; *See also Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977)(explaining that: "whether the description of a class is sufficiently definite to permit ascertainment of the class members must, of necessity, be determined on a case-by-case basis.")

In their complaint, Plaintiffs almost exclusively allege harassing conduct by Jason, who is no longer employed by the Defendant, and only in passing make references to a few other supervisors or foremen relating to isolated statements by such supervisors or foremen. For example, Plaintiffs have mentioned the names of five foremen, but Plaintiffs have made no allegations against them. Plaintiffs have mentioned the names of two foremen, one of whom is no longer employed by Defendant, and one supervisor and have attributed only one isolated alleged derogatory statement to each. After discovery, Plaintiffs have not introduced or revealed any new names of supervisors or new allegations against any supervisors that were involved in any harassing conduct. Plaintiffs also have failed to offer evidence or even make allegations regarding the conduct of any supervisors other

than Jason, who no longer is employed by Defendant. Other than alleging one isolated derogatory statement made by a foreman and a supervisor, Plaintiffs have offered no additional evidence of supervisory harassment. Since the allegations are against a former foreman and Plaintiffs have made only allegations of one or two isolated statements attributed to two current foremen/supervisors, the class definition appears to be inappropriate for purposes of class certification. In addition, the proposed class definition includes employees that never worked for Jason or the few other supervisors mentioned and there is no reason why the proposed class should consist of employees of supervisors other than the ones named by Plaintiffs. Therefore, a class action is not appropriate.

In an attempt to justify their claim against Defendant and to seek class certification, Plaintiffs have merely made allegations against one former foreman and have attempted to impute his alleged behavior on the rest of the supervisors by making isolated references to two foremen who may have been present when certain alleged derogatory statements were made. It appears that Plaintiffs have attempted to artificially justify their proposed class. There is a dispute whether certain derogatory statements were made in the first instance, and if they were made, whether such statements or conduct constitutes unlawful racial discrimination or harassment. This in no way should be construed to mean that derogatory statements are acceptable behavior. To the contrary, even one derogatory statement or comment aimed at a racial or ethnic group is one too many. However, whether or

not the allegations and evidence in this case support class certification is an entirely different question and is examined under the appropriate standard.

The bulk of Plaintiffs' class allegations are based upon unsupported and vague contentions that the City's management engaged in racial discrimination and harassment. To allow Plaintiffs to certify a class to include employees who work for other supervisors against whom there is no evidence or even allegations of harassment and to allow discovery pertaining to those supervisors would be to condone the ultimate fishing expedition.

III. Rule 23(a) Prerequisites to a Class Action

In order to obtain class certification a plaintiff must first satisfy all of the requirements of Rule 23(a) as articulated earlier in this opinion. Fed. R. Civ. P. 23(a); *Retired Chicago Police Ass'n*, 7 F.3d at 596.

A. Numerosity

In Plaintiffs' amended memorandum in support of their motion for class certification, Plaintiffs state that it is virtually impossible to provide the court with an exact number of potential members of the class at this time, but maintain that a good faith estimate of ninety-nine persons is sufficient. P.'s Amend. Mem. p. 5. Plaintiffs contend that "Defendant's murky production of employee records has made it nearly impossible to provide the Court with an accurate number." Pl.'s Reply p. 3. Plaintiffs' contention is completely disingenuous. Even though

Defendant has tendered to Plaintiffs voluminous lists of all laborers employed by Defendant at O'Hare from 1992 until the present, Def. Resp. to Pl.'s Amend. Mem. p. 4., Plaintiffs have been demanding lists of employees who hold other positions at O'Hare totally unrelated to the proposed class. Pl.'s Reply pages 3-4.

Plaintiffs also contend that Defendant has not produced a report indicating the percentage of "all" African-American and Hispanic employees at O'Hare. Pl.'s Reply at fn. 4. However, the proposed class definition Plaintiff wishes this court to certify does not include "all" African-American and Hispanic employees at O'Hare, but instead, includes a class of "all African-American and Hispanic employees, classified as laborers, for the City of Chicago, Department of Aviation at the O'Hare International Airport Facility ("O'Hare") from 1992 to 2002 who have been subjected to various forms of racial harassment because of Defendant's ineffective anti-harassment policy." P.'s Amend. Mem. pages 1-3.


1. Proposed Class Members

Plaintiffs have provided this court with two separate lists that collectively identify ninety-nine proposed class members. Pl.'s Ex. 4: African-American Employee #'s 1-75; Hispanic Employee #'s 1-24. One list identifies potential African-American class members and the other list identifies potential Hispanic class members. Plaintiffs maintain that these two lists reflect the proposed class because they encompass "all African-American and Hispanic employees, classified as

11

laborers, for the City of Chicago, Department of Aviation at the O'Hare International Airport Facility ("O'Hare") from 1992 to 2002 who have been subjected to various forms of racial harassment because of Defendant's ineffective anti-harassment policy." Pl.'s Amend. Mot. pages 1-3. Plaintiffs seek to certify this class under Count I of the complaint which alleges violation under both Title VII and Section 1981. Pl.'s Amend. Mem. p. 1.

## 2. Title VII

Title VII requires that a charge of discrimination be filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days "after the alleged unlawful employment practices occurred." *Tinner v. United Ins. Co. of America*, 308 F.3d 697, 707 (7th Cir 2002)(citing 42 U.S.C. § 2000e-5(e)(1)). The statute provides that the time period for the filing of the charge may be extended if the aggrieved person initially institutes proceedings with a state or local agency. *Id.* In the state of Illinois, the time period for filing of the charge of discrimination is 300 days. *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C*, 277 F.3d 882, 893 (7th Cir. 2001).

Plaintiffs have included in their proposed class the names of employees who no longer are employed as laborers for Defendant and who never filed an EEOC charge in the first place. The Supreme Court of the United States recently held that "[i]n the context of a request to alter the timely filing requirements of Title VII, this Court has stated that 'strict adherence to the procedural requirements specified by

12

the legislature is the best guarantee of evenhanded administration of the law.'" *See*

*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 108 (2002)(quoting

*Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)). Notwithstanding this holding,

Plaintiffs contend that these former laborers should be included in this proposed

class under the continuing violation theory. In addressing class claims, the Seventh

Circuit has stated "[i]t is not necessary that each class member have filed a charge

with the EEOC; however, only those who could have filed a charge at or after the

time a charge was filed by the class representative can be included in the class."

*Movement for Opportunity and Equality v. General Motors Corp*, 622 F.2d 1235,

1248 (7th Cir. 1980)(citations omitted).

Plaintiffs, acting as class representatives, filed their earliest charge of

discrimination with the EEOC on July 1, 2002. Accordingly, the filing period for a

Title VII claim by the named Plaintiffs in this action is within 180 days prior to July

1, 2002 (*i.e.* between January 2, 2002 and July 1, 2002). Therefore, any individual

who was not employed as a laborer by Defendant between January 2, 2002 and July

1, 2002 (the "Title VII filing period") could not have filed a charge in the first

instance. As such, forty-eight of the ninety-nine individuals listed in the proposed

class that were not employed as laborers by Defendant during the Title VII filing

period may not be considered part of the proposed class for Title VII relief. Pl.'s Ex.

4.

The court notes that of the remaining fifty-one proposed class members under Title VII, twelve have signed statements in which each laborer has individually declared that he or she has not been subjected to, or seen anyone else subjected to, any race discrimination, racial harassment, national origin discrimination or harassment, retaliation or any other improper treatment during his or her employment with the City. Also, each laborer has provided in the statement details about his or her individual experiences indicating the absence of any discrimination or harassment. Pl.'s Ex. 4; Def.'s App. Vol. I R.26; Vol. III. In addition, eight other individuals have declared or testified that they would not want to become members of the lawsuit brought by Plaintiffs in this case. Pl.'s Ex. 4; Def.'s App. Vol. R.26, 27; Vol. II(A)(B); Vol. III. As such, these twenty individuals may not be considered part of the proposed class for Title VII relief.

The court also notes that of the remaining thirty-one proposed class members under Title VII, four were not employed as laborers by Defendant at O'Hare between 1992 to 2002. Pl.'s Ex. 4; Def.'s App. Vol I, R. 13. In addition, one individual identified as a proposed class member in this motion is barred from this case because he previously filed and settled a lawsuit against the same Defendant asserting the same allegations as the named Plaintiffs in this action. Pl.'s Ex. 4; Def.'s App. Vol. I, Ex. 18.

Thus, for purposes of numerosity under Title VII, the proposed class contains only twenty-six members as opposed to the original ninety-nine set forth in the

motion.

### 3. Section 1981

For Section 1981 claims Congress has enacted a statute of limitations which provides: "a civil action arising under an Act of Congress enacted after the date of enactment of this section may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a). In *Jones v. R.R. Donnelley & Sons Co.*, 124 S.Ct. 1836 (2004) the United States Supreme Court stated: "We conclude that a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990 – and therefore is governed by §1658's 4-year statue of limitations – if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." *Jones*, 124 S.Ct. at 1845. In this case, as in *Jones*, Plaintiffs' Section 1981 claim arises under the 1991 Act and therefore was made possible by a post-1990 enactment. *Id.* Therefore, the 4-year statute of limitations applies in this case.

Plaintiffs, acting as class representatives, filed this case with this court on April 29, 2003. Accordingly, any cause of action that could have been filed by Plaintiffs in this case would have had to occurred within the four years preceding April 29, 2003 (*i.e.* between April 29, 1999 and April 29, 2003). Therefore, any individual who was not employed as a laborer by Defendant between April 29, 1999 and April 29, 2003 (the "Section 1981 filing period") could not have filed a case in the first instance. As such, twenty-seven of the ninety-nine individuals listed in the proposed class that were not employed as laborers by Defendant during the Section

15

1981filing period may not be considered part of the proposed class for Section 1981 relief. Pl.'s Ex. 4.

The court notes that of the remaining seventy-two proposed class members under Section 1981, thirteen have signed statements in which each individually declared: "I have not been subjected to, or seen anyone else subjected to, any race discrimination, racial harassment, national origin discrimination or harassment, retaliation or any other improper treatment during my employment with the City." Pl.'s Ex. 4; Def.'s App. Vol. I R.26; Vol. III. In addition, eight other individuals have declared or testified that they would not want to become members of the lawsuit brought by Plaintiffs in this case. Pl.'s Ex. 4; Def.'s App. Vol. R.26, 27; Vol. II(A)(B); Vol. III. As such, these twenty-one individuals may not be considered part of the proposed class for Section 1981 relief.

The court also notes that of the remaining fifty-one proposed class members under Section 1981, eleven were never employed as laborers by Defendant at O'Hare between 1992 and 2002. Pl.'s Ex. 4; Def.'s App. Vol I, R. 13. In addition, one individual identified as a proposed class member in this motion is barred from this case because he previously filed and settled a lawsuit against the same Defendant asserting the same allegations as the named Plaintiffs in this action. Pl.'s Ex. 4; Def.'s App. Vol. I, Ex. 18.

Thus, for purposes of numerosity under Section 1981, the proposed class contains only thirty-nine members as opposed to the original ninety-nine set forth in

the motion.

Plaintiffs have failed to establish that this proposed class, under both Title VII and Section 1981, is so numerous that joinder is impracticable in this matter. Plaintiffs have identified thirty-nine proposed class members, thirteen of which cannot proceed under Title VII. Therefore, at best, the proposed class only consists of twenty-six members who might be able to proceed under both Title VII and Section 1981. In addition, the court notes that joinder in these circumstances is not impracticable inasmuch as Plaintiffs have failed to establish that certification of such a small class would be warranted due to the lack of resources of the proposed class, fear of retaliation, or in the interest of judicial economy. Instead, Plaintiffs have filed their motion with speculation and conflicting testimony from proposed class members. Def.'s App. Ex. R. 20.

A plaintiff seeking class certification has a "burden of demonstrating the numerosity requirement of a class action, and 'mere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1).'"*Roe v. Town of Highland,* 909 F.2d 1097, 1100 (7th Cir. 1990)(quoting 7A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1762 at 164 (2d ed. 1986)). A plaintiff seeking class certification "cannot rely on 'conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity.'"*Id.* (quoting *Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir. 1989). In this case, Plaintiffs have attempted to give the false impression that the proposed class

consists of 99 individuals. However, Plaintiffs have failed miserably in their attempt in view of the fact that the vast majority of Plaintiffs' proposed class of 99 members, as discussed above, are not eligible or willing to participate in a class action. At best, Plaintiffs have identified 16 individuals, in addition to the named Plaintiffs, that may join their action, and it is not clear whether those 16 additional individuals were harassed. This court also notes that Plaintiffs' class definition is also too broad.

Plaintiffs have failed to establish that the proposed class in this case is so numerous and that joinder of all of the potential members would be impracticable.


### B. Commonality and Typicality

Even if Plaintiffs were able to meet the numerosity requirement of Rule 23(a) - which they have not met - they have failed to meet the commonality and typicality requirements as discussed below.

The commonality and typicality requirements of the Federal Rules "ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997). For effective representation of a class, the named representatives' claims must "have the same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n*, 7 F.3d at 596 (quoting *De La Fuente v. Stokley-an Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

As demonstrated in the numerosity analysis above, if a class was certified consisting of thirty-nine class members, only twenty-six would be able to seek relief under both Title VII and Section 1981 in accordance with the class definition. The remaining thirteen would only be able to advance under Title VII. Consequently, the legal and factual arguments would vary with respect to the different legal standards and necessary facts to be proved should the individuals be grouped as a class.

Moreover, even if this court were to certify all thirty-nine individuals as a class, the claims of the individuals are not common or typical of the claims of the class as a whole. For instance, in their amended motion for class certification, Plaintiffs do not allege that they were subject to a common form of racial harassment while they were employed as O'Hare laborers from 1992 until 2002. Instead, Plaintiffs admit that the O'Hare laborers endured "various forms of racial harassment" while they were employed from 1992 until 2002. Pl.'s Amend. Mem. pages 1-3. Plaintiffs also admit that different types of alleged harassing statements were made to them. Therefore, each alleged harassing statement would need to be individually examined by the trier of fact. In addition, Plaintiffs have alleged different forms of harassment such as being worked too hard by Jason and being made to stay outside when it was extremely cold or hot. Also, Plaintiffs have made virtually all of their allegations of harassment against Jason and not against other supervisors. Plaintiffs make it clear that Jason's shift was particularly difficult and

thus there will be differences in each class member's claim depending on which shifts the class member worked on and which supervisor covered the shift. The differences in the treatment of each employee is well illustrated by the many affidavits of employees introduced by Defendant that specifically state that they were not the subject of racial discrimination or harassment by Jason or any other supervisor.

In addition, Plaintiffs have alleged dozens of separate claims by the proposed class members against the Defendant. Pl.'s Amend. Mem. pages 6-11. Although these claims are carefully clumped together in the motion so as to appear that they were constant and occurred simultaneously, a closer review of the depositions suggests that each of the charges are distinct in content and vary with respect to the time and setting in which they allegedly occurred. Pl.'s Ex.'s 17-39. Furthermore, the facts asserted by the class representatives carry with them a myriad of allegations and possible defenses which this court would have to individually construe and ultimately apply for or against the proposed class as a whole. *Id.* Hence, Plaintiffs have failed to establish that there are questions of law or fact common to the proposed class or that the claims and defenses of the representative parties are typical of the claims or defenses of the proposed class.

C. Adequacy of Representation

Even if Plaintiffs were able to establish all of the other requirements of Rule

23(a) - which they have not - their attempt to certify this class would still fail under the adequacy requirement discussed below.

Plaintiffs in this matter believe they can fairly and adequately protect the interests of their proposed class. Yet, the level of inadequacy the Plaintiffs have demonstrated in the filing of this motion for class certification casts serious doubt on their ability to represent an entire class of individuals. Plaintiffs have done a poor job in preparing their motion for class certification and supporting documents. For instance, the ten named Plainitffs, in their amended motion for class certification, claimed that they were African-American or Hispanic laborers for the City at O'Hare who have been employed "from at least 1992 to 2002." However, Plaintiffs' own exhibits in support of their motion reveal that four of the ten named Plaintiffs were not employed by the City "from at least 1992 to 2002." Pl.'s Ex. 4. In addition, Plainitffs in their Reply have attempted to buttress their argument for class certification by asking the court to consider a completely irrelevant article. Pl.'s Reply p. 1; Pl.'s Reply Ex. 2. Furthermore, Plaintiffs' attempt to include in their class an individual who had already filed and settled an action against Defendant alleging the same facts and allegations does not demonstrate good faith. The Court also notes that Defendant has correctly pointed to numerous discrepancies of facts that Plaintiffs have alleged and maintained throughout their briefs. Def.'s App. Ex. R.20. One example why Plaintiffs would not be able to adequately represent a class is the method in which the Plaintiffs have tried to meet the numerosity requirement

by poorly identifying a proposed class of ninety-nine individuals in the hope that some of the names might survive. However, as noted above, the vast majority of the proposed class identified by the Plaintiffs cannot survive.

In addition, Plaintiffs' counsel's attempt to portray themselves as experienced litigators of class actions is unconvincing. A closer look at the facts based upon Plaintiffs' representations relating to class litigation experience and Defendant's briefs reveals that Plaintiffs' counsel previously were involved in two cases touching on class certification. In one case the class was not certified and in the other case the case was settled before trial. Therefore, Plaintiffs' counsel have not met their burden of showing to the court that they are experienced with class action matters. Plaintiffs have failed to meet the adequacy of representation requirements.

Based upon the foregoing, we conclude that Plaintiffs have failed to satisfy all of the requirements of Rule 23(a) and therefore, a class action is not appropriate.


II. Rule 23(b) Class Actions Maintainability

A plaintiff who meets Rule 23(a) requirements would still have to establish that the action is maintainable under Rule 23(b). *See Williams*, 204 F.3d at 760(discussing Fed.R.Civ.P. 23(a)). In view of the fact that Plaintiffs have failed to meet the rule 23(a) requirements and this court has determined that a class action is not appropriate, we need not address whether the class action is maintainable under Rule 23(b).

## CONCLUSION

Based upon the foregoing, we deny Plaintiffs' motion for class certification. In addition, we deny Plaintiffs' motion to strike and/or exclude statements procured by the Defendant from putative class members. Defendant's motion to strike is also denied as moot.


Samuel Der-Yeghiayan
United States District Court Judge


Dated: May 19, 2004